SNELL & WILMER L.L.P.
Michele S. Assayag (SBN: 109540)
massayag@swlaw.com
Nicholas S. Couchot (SBN: 331971)
ncouchot@swlaw.com
600 Anton Blvd., Suite 1400
Costa Mesa, CA 92626
Telephone: (714) 427-7000
Facsimile: (714) 427-7799

Attorneys for Secured Creditor
BANK OF AMERICA, N.A.

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re:<br>Bright Care Veterinary Hospital, Inc.,<br><br>Debtor. | Lead Case No.: 8:25-bk-10900-SC<br>Chapter 11<br>Jointly administered with:<br>Case No. 8:25-bk-10902-SC |
| In re:<br>Bright Care Veterinary Group, Inc,<br><br>Debtor. | **STIPULATION FOR INTERIM USE OF CASH COLLATERAL AND ADEQUATE PROTECTION**<br><br>[11 U.S.C. § 363] |
| ☐ Affects Both Debtors<br>☐ Affects Bright Care Veterinary Hospital, Inc., only<br>■ Affects Bright Care Veterinary Group, Inc., only<br><br>Debtors. | Hearing:<br>Date:    May 6, 2025<br>Time:    1:30 PM<br>Crtrm.:   5C<br>Address: 411 West Fourth Street<br>         Santa Ana, CA 92701<br>Judge:   Hon. Scott C. Clarkson |

4925-4146-5372

This Stipulation for Interim Use of Cash Collateral and Adequate Protection ("Stipulation") is made by and between Bright Care Veterinary Group, Inc., one of the debtors and debtors in possession in the above-captioned jointly administered bankruptcy case ("Debtor"), and Bank of America, N.A. ("Lender"), a secured creditor holding liens against property of the Debtor's estate. Lender asserts that these liens arise from the following transactions, facts, and circumstances.

## RECITALS

A.  On or about January 27, 2021, Lender extended to Debtor a fixed rate term loan ("Facility One") in the principal amount of $1,964,333.35, and a project loan ("Facility Two") that would allow the Debtor to request advances from Lender up to $743,100.00 (collectively, the "Loan"), which is evidenced by, among other documents, a Loan Agreement dated January 27, 2021 (the "Loan Agreement").

B.  On or about January 27, 2021, as security for the Debtor's payment and performance obligations to Lender under the Loan Agreement, the Debtor executed a Security Agreement in favor of Lender (the "Security Agreement"). Pursuant to the Security Agreement, the Debtor's payment and performance obligations owed to Lender under the Loan Agreement were secured by substantially all of the personal property assets of the Debtor, including, but not limited to, all accounts, chattel paper, instruments, contract rights, general intangibles, inventory, and proceeds and profits thereof (collectively, the "Collateral"). Lender's interests in the Collateral were perfected pursuant to the filing of a UCC-1 Financing Statement with the California Secretary of State on February 5, 2021, as Document No. U210022232118 (the "Financing Statement"). Hereinafter, the Loan Agreement, Security Agreement, and Financing Statement, and all other documents executed in connection with the Loan shall be referred to collectively as the "Loan Documents."

C.  Pursuant to the Loan Documents, the Debtor was required to repay the amounts due under Facility One by making payments of principal and interest in equal combined installments of $25,515.05 beginning on February 27, 2021, and on the same day of each month thereafter, and ending on January 27, 2028. On January 27, 2028, the Debtor was also required to repay the remaining principal balance plus all interest then due.

D. Pursuant to the Loan Documents, the Debtor was required to repay the amounts due under Facility Two by making payments of principal and interest in equal combined installments of $6,244.74 beginning on August 20, 2022, and on the same day of each month thereafter. On July 20, 2029, the Debtor was also required to repay the remaining principal balance plus all interest then due.

E. Lender asserts that the Debtor defaulted under the Loan Documents by failing to make all payments as and when due. Lender asserts that the Debtor failed to make the payments due on November 27, 2024, and December 27, 2024, and all payments due thereafter.

F. As a result of these asserted defaults, Lender issued multiple default correspondences to the Debtor ("Notices of Default"), dated as of January 27, 2025, and March 20, 2025, demanding that the Debtor cure the above-referenced events of default. Pursuant to the Notices of Default, Lender notified the Debtor that the Loan had been accelerated, and the entire indebtedness was now immediately due and payable.

G. Lender asserts that, as of March 13, 2025, the Debtor was indebted to Lender under the Loan Documents with respect to Facility One in the total amount of $953,117.67, comprised of $946,116.54 in principal and $7,001.13 in accrued interest. Facility One is currently accruing interest at the per diem rate of $65.70. Lender asserts that, as of March 13, 2025, the Debtor was indebted to Lender under the Loan Documents with respect to Facility Two in the total amount of $319,551.09, comprised of $318,379.28 in principal and $1,171.81 in accrued interest. Facility Two is currently accruing interest at the per diem rate of $22.11. These amounts are exclusive of attorneys' fees and costs, to which Lender asserts it is entitled under the terms of the Loan Documents. Lender asserts that additional interest, fees and costs, including but not limited to attorneys' fees and costs, continue to accrue pursuant to the terms of the Loan Documents.

H. The Debtor is the debtor and debtor in possession in the above-captioned Chapter 11 bankruptcy case, filed on April 8, 2025 (the "Petition Date"), assigned case number 8:25-bk-10902-SC (the "Bankruptcy Case") and pending before the Honorable Scott C. Clarkson, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Central District of California.

I. Lender asserts that the Collateral, which consists of substantially all of Debtor's personal property, is Lender's cash collateral pursuant to Sections 552(b) and 363(a) of the Bankruptcy Code (the "Cash Collateral"). The Debtor desires to use the Cash Collateral to maintain its ongoing business and filed an *Emergency Motion for Order: (I) Authorizing Interim Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code; (II) Authorizing Adequate Protection; and (III) Setting a Final Hearing* [Docket No. 4] (the "Motion"), which is set for hearing on May 6, 2025. Subject to the Court's approval, the parties desire to memorialize their agreement regarding the Debtor's use of Lender's Cash Collateral, and to resolve the Motion on the terms and conditions set forth herein.

J. As of the Petition Date, Lender alleges that the total amount due to Lender under the Loan Documents was $1,274,951.82, which consists of $954,825.87 due under Facility One and $320,125.95 under Facility Two. Lender further alleges that these amounts are not subject to defense, offset, reduction or counterclaim. This sum is in addition to accruing interest, attorneys' fees and costs and other miscellaneous fees and costs.

K. Lender asserts that it holds a valid, perfected, enforceable and unavoidable security interest in, without limitation, all of the Cash Collateral. Accordingly, pursuant to Sections 552(b), 363(a) and 363(c)(2) of the Bankruptcy Code, the Debtor is prohibited from using the Cash Collateral absent Lender's consent to such use or a court order authorizing such use. The Debtor has sought such authority pursuant to the Motion.

L. The parties hereto enter into this Stipulation to enable the Debtor to use Lender's Cash Collateral in the operation of the Debtor's business as more particularly set forth below. The Debtor represents that, after the filing of its Chapter 11 petition and prior to the execution of this Stipulation, no Cash Collateral of Lender has been utilized by the Debtor that is not comprehended within the framework of the Budget (defined below), which is attached hereto as Exhibit "1".

NOW, THEREFORE for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD
SUITE 1400
COSTA MESA, CALIFORNIA 92626

4925-4146-5372

- 4 -

## STIPULATION

1. <u>Recitals</u>. The Recitals are incorporated herein by this reference. The parties agree that the matters set forth in the Recitals are true and correct.

2. <u>Adequate Protection</u>. The Debtor shall make adequate protection payments in the amount of (i) $25,515.05 per month to Lender, which represents the monthly repayment amount for Facility One, and (ii) $6,244.74 per month to Lender, which represents the monthly repayment amount for Facility Two, beginning on June 1, 2025, and continuing thereafter on the first day of each month through and including July 2025, unless otherwise extended pursuant to the provisions of this Stipulation.

3. <u>Definition of Cash Collateral</u>. The term "Cash Collateral," as that term is used in this Stipulation, includes, without limitation, all of the pre-petition and post-petition proceeds derived from or in connection with the Collateral. Lender holds a valid, enforceable, perfected and unavoidable security interest and lien in the Cash Collateral within the meaning of Sections 552(b) and 363(a) of the Bankruptcy Code whether existing pre-petition or post-petition, and whether or not in the possession, custody or control of the Debtor.

4. <u>Use of Cash Collateral.</u> The Debtor shall be entitled to use the Cash Collateral without further order of this Court or written permission of Lender, to pay the reasonable, ordinary and necessary expenses of operating and maintaining the Debtor's business ("<u>Ordinary Expenses</u>"), as set forth in the proposed thirteen-week projection attached as Exhibit "1" to the *Omnibus Declaration of Alireza Gorgi in Support of Emergency Motions* [Docket No. 6], and any subsequent projections issued by the Debtor and approved in writing by Lender (the "<u>Budget</u>"), subject to the terms and conditions set forth below. The Budget shall include sufficient information to allow Lender to make an informed determination regarding such Budget.

 a. All Cash Collateral derived from and/or produced by the Collateral shall be deposited, upon receipt by the Debtor or its agents or employees, in accounts designated by the Debtor with the Office of the United States Trustee ("<u>DIP Accounts</u>"), whether maintained with Lender or at other financial institutions. The Debtor shall deliver copies of the monthly bank

statements for the DIP Accounts to Lender within three days of the Debtor's receipt of such statements from its bank(s).

   b. The Cash Collateral shall not be used by the Debtor or its agents or employees, or any other person or party, for any purpose, other than as is specifically provided in this Stipulation and the Budget. The Debtor shall not withdraw any funds from the DIP Accounts without Lender's express written consent or Bankruptcy Court authorization, except to pay an item reflected in the Budget.

   c. The Debtor may not use Cash Collateral for the purpose of making any capital investment or improvement of or in connection with its business or for any other purpose without the prior written authorization of Lender or Bankruptcy Court Order.

   d. The Debtor's right to use Cash Collateral shall continue through and including July 31, 2025, according to the terms set forth herein, unless such right terminates earlier upon the occurrence of a Default as defined in Paragraph 15, herein, following written notice and a three (3) day cure period.

   e. The Debtor may not exceed the Budget on a monthly basis for any disbursement category by more than fifteen percent (15%) as determined at the end of each calendar month set forth in the Budget absent written consent of Lender.

   f. Except as provided in this Stipulation, the Debtor must request and obtain Lender's prior written consent or Bankruptcy Court authorization to use any Cash Collateral to pay for any unbudgeted expenses or any budgeted expenses in excess of the budgeted amount set forth in the Budget attached hereto. All requests from the Debtor pursuant to this paragraph shall be in writing and shall contain sufficient detail for Lender to make an informed decision with respect to the consent requested. Failure by Lender to object to such request within three (3)

business days following receipt of the Debtor's request shall be deemed to be Lender's consent to such request.

     5.    <u>Reporting</u>.  The Debtor shall provide the following reports to Lender within thirty (30) days of entry by the Bankruptcy Court of its Order approving this Stipulation:

    a. All documents evidencing the Debtor's income statement for the year ending December 31, 2024, and any quarterly income statements for the year 2025;

    b. All documents evidencing the Debtor's balance sheet for the year ending December 31, 2024, and any quarterly balance statements for the year 2025;

    c. Personal financial statements of Alireza A. Gorgi and Mehrnaz Farrokhi (the "<u>Guarantors</u>") for the years 2024 and 2025, whether prepared by Guarantors or by a third party, including any attachments or schedules;

    d. Guarantors' 2024 federal and state income tax returns, including all schedules, W-2s, 1099s, K-1s, and attachments;

    e. A current and complete business debt schedule, identifying all outstanding business obligations of the Debtor, including the name of each creditor, the amount owed, repayment terms, collateral securing the debt (if any), and current payment status.

     6.    <u>Replacement Lien.</u>  Lender shall be granted a valid, perfected, and enforceable replacement lien of first priority in all of the Debtor's post-petition assets, Collateral and Cash Collateral now owned or hereafter acquired, excluding avoidance claims and causes of action under Chapter 5 of Title 11 of the United States Code. The replacement lien granted to Lender shall secure replacement to Lender of the actual amount of Cash Collateral utilized by the Debtor in the period subsequent to the Petition Date up to the full amount of the Lender's secured claim. The replacement lien shall be of the same order of priority and nature as Lender's pre-petition lien described in recital B, above. The replacement lien and security interest granted herein are and shall be valid, enforceable and fully perfected, and no filing or recordation, or other act in accordance with any applicable local, state or federal law is necessary to create or perfect such lien and security interest.

7. <u>Lien on DIP Accounts</u>.  Lender shall be granted a valid, perfected and enforceable replacement lien of first priority in the DIP Accounts opened pursuant to Paragraph 4.a to the same extent, priority and validity of Lender's pre-petition security interest.  By the Bankruptcy Court's Order approving this Stipulation, Lender's security interest in the DIP Account will be deemed valid, enforceable, and fully perfected, and no filing or recordation, or other act in accordance with any applicable local, state or federal law is necessary to create or perfect such lien and security interest.

8. <u>No Effect on Priority</u>.  Nothing contained in this Stipulation and any order approving this Stipulation shall be deemed in any manner to affect the validity, enforceability, extent and priority of the lien represented by the Loan Documents, by reason of any claim of equitable subordination or otherwise, as such terms and requirements are deemed necessary to adequately protect the interest of Lender in the Cash Collateral.

9. <u>Superpriority Claim</u>.  To the extent Lender is not adequately protected by the adequate protection payments set forth in Paragraph 2, *supra*, and in accordance with Bankruptcy Code Section 364(c)(1), the Debtor's pre- and post-petition obligations to Lender shall constitute claims (the "<u>Superpriority Claims</u>") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code Sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), and 726, and shall at all times be senior to the rights of the Debtor, and any successor trustee or any creditor in this Bankruptcy Case or any subsequent proceedings under the Bankruptcy Code, including any subsequent proceedings under Chapter 7.  No cost or expense of administration under Bankruptcy Code Sections 105, 503(b), 507(b), or otherwise shall be senior to, or *pari passu* with, the Superpriority Claims.  Nothing herein shall affect or impair Lender's right to seek additional adequate protection of its interests.

10. <u>No Further Encumbrances</u>.  The Debtor shall not grant, nor suffer to be granted, any lien or encumbrance on the Collateral, Cash Collateral or DIP Accounts unless and until Lender's secured claim is paid in full, or unless Lender has consented in writing to such lien or encumbrance.

- 8 -

4925-4146-5372

11. <u>No Admission Regarding Adequate Protection</u>.  Nothing contained in the Stipulation or the order approving same shall be deemed to constitute an admission that Lender is adequately protected except as to the Debtor's use of Cash Collateral as prescribed in the Stipulation.

12. <u>Interim Value of Property</u>.  The rights granted in this Stipulation are for the purpose of the Debtor's use of the Collateral and to afford adequate protection to Lender of any such collateral interest it may have in such Collateral and/or Cash Collateral.  The parties have not reached an agreement regarding the value of the Collateral for purposes of the amount of Lender's allowed secured claim and future adequate protection payments. Nothing contained in this Stipulation shall be deemed to constitute an admission by either party regarding the value of the Collateral.

13. <u>Reporting and Inspection of Books and Records</u>. The Debtor agrees to permit Lender, upon reasonable notice, to inspect the Debtor's business location(s), Lender's Collateral and the books and records of the Debtor in accordance with the terms of the Loan Documents. Lender, its representatives, employees, consultants and attorneys shall be granted access to the Debtor's business location(s), as allowed by the Loan Documents, for purposes of inspection and appraisal, and the Debtor shall advise Lender, upon request, of the location of the Collateral and the DIP Accounts.

14. <u>Insurance</u>.  The Debtor shall maintain insurance that complies with the requirements as set forth within the guidelines of the Office of the United States Trustee and that is consistent with the coverage required in the Loan Documents. The Debtor shall make any necessary changes to indicate Lender as the loss payee on such insurance and shall provide evidence of the same to Lender.

15. <u>Termination of Stipulation</u>.  This Stipulation and the Debtor's rights to use Cash Collateral shall terminate upon the occurrence of any of the following events (each such event a "<u>Default</u>" and collectively, the "<u>Defaults</u>"):

a. The Debtor's failure to perform any term of this Stipulation and to cure such breach within three (3) days after the Debtor's receipt of written notice from Lender of

such claimed breach, with any dispute over any uncured breach to be resolved by an emergency motion made to the Court with proper notice;

      b.    Entry of an order (i) granting any creditor other than Lender relief from the automatic stay to exercise any rights which may impair Lender's Collateral under any of the Loan Documents, or (ii) dismissing the case;

      c.    The Debtor's filing of a motion to abandon any portion of the Collateral;

      d.    The Debtor's failure to maintain insurance as required above; and

      e.    The Debtor's failure to make any of the payments to Lender as described in this Stipulation.

      f.    Termination of the automatic stay under 11 U.S.C. § 362(a) in favor of Lender.

      g.    The appointment of a Chapter 11 Trustee pursuant to 11 U.S.C. § 1104 upon motion of Lender, any other creditor of the Debtor, or the United States Trustee.

      h.    The conversion of the Bankruptcy Case to Chapter 7.

16.    <u>Orderly Liquidation Upon Termination</u>.  Upon any uncured breach, except termination of the automatic stay in favor of Lender, appointment of a Chapter 11 Trustee, or conversion of the Bankruptcy Case from Chapter 11 to Chapter 7, in which case, cash collateral authority under this Stipulation shall automatically terminate, the parties agree to appear before the Court on an emergency motion brought by either party to allow the Court to rule on the alleged uncured breach. The only issue to be considered by the Court is whether a breach has occurred under the terms of this Stipulation and whether such breach has been cured by the Debtor.  If the Court determines that no uncured breach has occurred, then Debtor may continue to use Cash Collateral in accordance with this Stipulation. If the Court finds that an uncured breach has occurred, then the parties agree that the Court shall order the immediate execution of a fee-based

orderly liquidation agreement, with such liquidation to begin immediately. The form of such agreement shall be negotiated in good faith by Lender and the Debtor, with an agreement on the form to be concluded by no later than ten calendar days following the entry by the Court of its Order finding the occurrence of such uncured breach. If the form of the liquidation agreement is not agreed upon by the parties by the time of any ruling by the Court that an uncured breach under this Stipulation has occurred as set forth above, then the Court will approve the final form of the liquidation agreement as part of the hearing on the uncured breach and order that it be executed by the parties.

17. <u>Further Authority to Use Cash Collateral</u>. The Debtor shall file a proposed new budget by no later than June 1, 2025, pursuant to which the Debtor seeks authority to use Cash Collateral beyond July 31, 2025, assuming that cash collateral authority has not been terminated in advance thereof, pursuant to the terms of this Stipulation. If Lender has any objection to the continued use of Cash Collateral beyond July 31, 2025, Lender shall file its objection by no later than 14 days in advance of any hearing on Debtor's Motion for further cash collateral use, with any reply to such objection to be filed by the Debtor at least seven days in advance of such hearing. If Lender consents to continued use of Cash Collateral based upon the budget filed by the Debtor on or before June 1, 2025, then the parties shall file a stipulation and proposed order in accordance with such agreement.

18. <u>No Prejudice</u>. This Stipulation is without prejudice to Lender's right, during the pendency of the term of this Stipulation, to seek any relief from the Bankruptcy Court or any other court that it deems appropriate. This Stipulation is for the limited purpose of providing for the Debtor's use of the Cash Collateral on an interim basis and nothing contained in this Stipulation, or any delay or failure by Lender in exercising any right, power or privilege under the Stipulation, shall prejudice or be construed as a waiver of or affecting or impairing any rights, remedies, defaults, claims or admissions, which either Lender or Debtor may have against the other.

19. <u>Term of Stipulation</u>. This Stipulation shall be in full force and effect until July 31, 2025, unless extended or shortened as provided herein or otherwise ordered by the Court. This Stipulation may be extended if approved in writing by Lender and the Debtor.

20. <u>Automatic Stay</u>. The automatic stay pursuant to Section 362 of the Bankruptcy Code is lifted and modified only to the extent necessary to permit the actions and events set forth herein.

21. <u>General Provisions</u>.

　　a. <u>Waiver</u>. No delay or failure of Lender in exercising any right, power, or privilege, nor any single or partial exercise thereof, or any abandonment or discontinuance of steps to enforce such a right, power, or privilege shall be deemed to be a waiver of any right, power, or privilege. The rights and remedies of Lender hereunder are cumulative. Any waiver or consent by Lender of any Default hereunder, or any modification or amendment hereof, must be in writing.

　　b. <u>Further Assurances</u>. All parties will execute and deliver all such further documents and take such further action as any party may from time-to-time reasonably request for the preservation to the parties of their rights hereunder and under all related agreements.

　　c. <u>Notices</u>. All notices, requests, demands given or made upon the respective parties shall be deemed to have been given or made when emailed as follows:

　　　　To Lender:　　　　Seth Washington (seth.washington@bofa.com)

　　　　With a copy to:　　Michele S. Assayag, Esq. (massayag@swlaw.com)

　　　　To Debtor:　　　　Alireza A. Gorgi (ali.gorgi@brightcarevet.com)

　　　　With a copy to:　　David B. Golubchik, Esq. (dbg@lnbyg.com)

　　d. <u>Assignability</u>. This Stipulation shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns except that the Debtor's rights hereunder are not assignable expressly, explicitly, by operation of law, or otherwise.

　　e. <u>Binding Effect</u>. The terms and conditions of this Stipulation shall be *res judicata* and binding upon any successor estate and upon any trustee appointed herein or in any successor estate.

　　f. <u>Neutral Construction</u>. Each of the parties hereto has been involved in the negotiation of this Stipulation and has received legal advice from its attorneys with respect

1   to the execution of this Stipulation. The parties hereto shall be considered to be the joint authors
2   of this Stipulation.

3           g.   Integration. Except as expressly provided in this Stipulation, this
4   Stipulation is the final written expression of all of the agreements, conditions and covenants among
5   the parties with respect to the subject matter hereof and supersedes all prior or contemporaneous
6   agreements and negotiations among the parties and/or their respective counsel with respect to the
7   subject matter covered hereby.

8           h.   Bankruptcy Court Order. This Stipulation shall be submitted
9   forthwith to the Bankruptcy Court for approval, and, in that regard, the Debtor and/or Lender may
10  give such notice and opportunity to be heard as is required under the Bankruptcy Rules and other
11  applicable law.

12          i.   Binding on Successors. This Stipulation shall be binding on the
13  Debtor, and any and all assigns and/or successors-in-interest to the Debtor, including but not limited
14  to any trustee appointed in the Chapter 11 proceeding, or any trustee in a Chapter 7 proceeding if
15  the case is converted, and in any future bankruptcy proceeding in which any of the collateral is
16  claimed and/or determined to be property of the estate; provided however, that this Stipulation is
17  not intended to adjudicate any other secured or unsecured creditor's respective rights.

18          j.   No Agreement to Provide Financial Accommodation. No provision
19  of this Stipulation shall in any way impose upon Lender any duty or obligation to provide any
20  financing or financial accommodation to the Debtor or any other party to collect, sell, lease or
21  otherwise dispose of any of the Cash Collateral, to proceed against any party, person, individual or
22  entity, to proceed against or exhaust any security held by Lender, or any other party, person,
23  individual or entity, or to otherwise pursue any action, right or remedy in Lender's power
24  whatsoever.
25  / / /
26  / / /
27  / / /
28  / / /

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD
SUITE 1400
COSTA MESA, CALIFORNIA 92626

4925-4146-5372

- 13 -

k. <u>Execution in Counterparts</u>. This Stipulation may be executed in several counterparts and any and all such executed counterparts shall constitute a single agreement binding on each party hereto. Furthermore, facsimiles or electronic versions of signatures may be taken as the actual and original signatures.

<u>IT IS SO STIPULATED</u>.

DATED: April 28, 2025        BRIGHT CARE VETERINARY GROUP, INC.

By: /Alireza Goig/
Name: Alireza Goig
Its: CEO

DATED: April 28, 2025        BANK OF AMERICA, N.A.

By: /Seth Washington/
Name: Seth Washington
Its: AVP

Approved as to form:

DATED: April 28, 2025        SNELL & WILMER L.L.P.

By: /s/Michele S. Assayag
Michele S. Assayag
Nicholas S. Couchot

Attorneys for Secured Creditor
Bank of America, N.A.

DATED: April 28, 2025        LEVENE, NEALE, BENDER, YOO & GOLUBCHIK, L.L.P.

By: /David B. Golubchik/
David B. Golubchik
Robert M. Carrasco

Attorneys for Debtor
Bright Care Veterinary Group, Inc.

- 14 -

4925-4146-5372

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

600 Anton Blvd., Suite 1400, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*): **STIPULATION FOR INTERIM USE OF CASH COLLATERAL AND ADEQUATE PROTECTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **4/29/2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Robert Carrasco     rmc@lnbyg.com, rmc@lnbyg.com
David B Golubchik     dbg@lnbyg.com, dbg@lnbyg.com
Bernard J Kornberg     bernie.kornberg@millernash.com, elw@severson.com
Kenneth Misken     Kenneth.M.Misken@usdoj.gov
United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov
Dylan J Yamamoto     dylan@echoparklegal.com
Michele S Assayag     massayag@swlaw.com, kroger@swlaw.com
LESLIE A BOWER     leslie@labowerlaw.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **4/29/2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Bright Care Veterinary Hospital, Inc.
1400 N Burton Dr.
Anaheim, CA 92806

Leslie A. Bower
Bower & Associates
15 Enterprise Ste 250
PO Box 11748
Newport Beach, CA 92658

Bright Care Veterinary Group, Inc.
26012 Marguerite Pkwy, Ste O
Mission Viejo, CA 92692

U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4/29/2025 | Kevin Roger | /s/Kevin Roger |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**